Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and his Honorable Courage. Good morning. This is Judge Wilson in Tampa. Judge Newsom is in Birmingham and Judge Ed Karnes is in Montgomery. And we have four appeals that are scheduled for oral argument this morning. I would advise the lawyers that we've read the briefs and we have examined relevant parts of the record. If that will assist you in confining your arguments to the precise issues that are presented for our consideration on appeal. Ms. Geddes, Valerie Geddes, is the courtroom deputy and she will serve as your timekeeper. And she will let you know when your time to argue has expired. And she will also give you a two-minute warning. And I believe the appellants in these four cases have also reserved some time for rebuttal argument. So with those preliminary comments, I believe that we are ready to proceed. And we will proceed with the first argument. This is Charles Breland, Jr. v. The United States. Richard Gall is here for Appellant Breland. Christopher Van Dusen is here for the appellees. And Mr. Gall, are you ready to proceed with your argument? Good morning, Your Honor. I am. Good morning. Your Honor, this is Richard Gall. I represent Charles Breland, the individual Chapter 11 debtor in this case, also the appellant. And I'm in Mobile, Alabama this morning. May it please the court. This appeal presents a troika of statutes which together unconstitutionally subject Mr. Breland to involuntary servitude or peonage in violation of the 13th Amendment. Mr. Breland has suffered and is suffering immediate injury because the three statutes implicated in this Chapter 11 individual bankruptcy case where a trustee was appointed. The three offending statutes are as follows, all under Title 11, all under the Bankruptcy Code. The first, Section 1115A2. Counsel, this is Judge Carnes. Let me ask you a question. We don't have a re-org, well, we didn't have a re-org plan early on. Is a re-org plan been approved? No, sir. No plan of re-organization has been filed. I think one was filed early on but withdrawn, so none has been filed and we haven't had a confirmation hearing yet still. And Mr. Breland hadn't moved to dismiss the Chapter 11 and convert to a 7, had he? He moved to dismiss the Chapter 11 early on, which is in the record, and that was denied by the court. But he has not moved to convert it to a 7? He has not. In fact, under the three statutes I was going to talk about, it's 1112, which allows for conversion or dismissal. But once a trustee was appointed, he actually lost the ability to automatically convert or dismiss. Right, but he didn't lose all hope to convert to a 7. He doesn't want a 7, right? Right. This case has been noted by the appellee. He wants 11, but he wants to control the income of the estate, correct? He's asked for dismissal. He would like the case to be dismissed. But if he dismisses and then the creditors again force him back into 11, we'll be back where we started from. Well, Judge, our point is they can't force him into an 11 with a trustee because his post-petition earnings for services under 1115A2 are now included. Since 2005, when Congress added 1115A2, they put his post-petition earnings for services into the estate. And when you combine that with a trustee and when you combine that with the inability under Section 1112 for him to have the right to convert or dismiss, you have involuntary servitude. What about the argument that, look, he knew what Chapter 11 law said or he's charged with knowing what Chapter 11 law said when he filed, voluntarily filed for Chapter 11 protection. And he knew that a trustee could be appointed in circumstances such as these. And he knew if there was a trustee appointed, he'd lose control of the state income. So he knew going in and he voluntarily took a step which subjected him to this. Judge, you can't waive a constitutional right. I'm sorry, Counsel. We see waivers of constitutional rights day in and day out. You don't have a constitutional right to Chapter 11 to file a Chapter 11. But when you file a Chapter 11, I don't see why the person who files 11 doesn't submit to all the consequences of an 11 when he voluntarily. It's not involuntary. Well, Your Honor, I'm not saying it's a constitutional right to a Chapter 11. I suppose Congress could choose at some point in time to title 11, I suppose. But what I'm saying is he has a constitutional right under the 13th Amendment which says neither slavery nor involuntary servitude exists within the United States. Counsel, if the remedy from the creditors pursuing him is a Chapter 11 and it comes with these conditions and these provisions and he voluntarily files for an 11, then it seems to me like he has submitted himself to that and has agreed to it. Your Honor, let me give you a good analogy. So in the Chapter 13 context, which is a smaller version of an individual reorganization case, Congress did its homework there. We know that. And Congress made, because of this very conundrum we're talking about, said that no individual may be involuntarily placed into one, a 13th. No individual case may be converted. Counsel, there's no constitutional right that says whatever Congress does in a 13th has got to do in an 11th. And also Congress could quite rationally decide, look, 13s are going to be people, a lot of whom are going to be pro se and so forth. But somebody coming in and filing a Chapter 11, most times they're going to be counseled and they're going to be, we would like to charge them as the Constitution permits us to charge them with knowledge of what they're submitting themselves to. Well, Your Honor, the Constitution, like this Court, does not make a distinction between those with less assets or more assets. The Constitution doesn't make a distinction between those who have the wherewithal to have counsel and those who may not. But it permits Congress to make a distinction. Congress can offer more protections or fewer traps for someone who is more likely to be pro se and lower income than for someone with your client's sophistication. I'm not going to take any more of your time. You know where I'm coming from. Well, I just want to say the grand stoplight here is the Constitution. Congress recognized it in the Chapter 13 context. The point is they missed it in the Chapter 11 context. The 13th Amendment does not make such a distinction. And so when they didn't take it into consideration in the Chapter 11 individual context, Congress ran that red light. So this is Judge Newsom. Let me ask you a quick question. It seems to me that we're talking a lot here about the merits of the 13th Amendment claim. And to a certain extent, the district court seems to have sort of collapsed the merits in the standing inquiry. As I read the district court's opinion, it basically says because you've got no 13th Amendment claim, there is no involuntary servitude here. You don't have standing. I'm not sure that's quite right. Aren't the standing and merits issues separate? I mean, to beat back the district court's standing holding, do you have to get all the way to the position that there's a 13th Amendment violation here? Well, we say there is standing, and it is ripe, because there is an immediate injury. And that's because 1115A2 says his post-petition earnings for services immediately come into the estate. In fact, he's working for the estate now. Thank you. In fact, he's working for the estate now. And not only that, if he quit working for the estate and say he went to work for someone else, I mean just some other company, his post-petition earnings would still come into this estate. So essentially, the other side is saying, well, he can just stop working, but he must subsist. Now, he does have Social Security income, but that's exempt. That can't be taken into consideration. Now, let me ask you this before your time expires. So the voluntariness component that Judge Carnes was asking you about obviously runs the merits of the 13th Amendment claim, which pertains to involuntary servitude. But does it also weaken your standing argument, the fact that you walked into Chapter 11 kind of eyes wide open? No, because when Mr. Breland came into the case, he did not have a trustee appointed. Chapter 13 cases have trustees automatically appointed. But it was when the trustee was appointed and when 1115A2 brought his post-petition earnings in and when he had no way out under 1112 to convert or dismiss, that was the trigger. And let me say, very importantly, that the rightness issue, yes, there's not a plan yet. But in a Chapter 13 case, again by analogy, there's not a plan for a period of time. And in the gap period prior to the filing of the plan, the post-petition earnings of the individual debtor are turned over to the trustee's account. The same exact thing is happening here. And I apologize. The same exact thing is happening here. And I'm sorry, my alarm told me I had completed my ten minutes. Have I answered your question, Judge Newsom? Yeah, and we can circle back on rebuttal if necessary. All right. Thank you very much. Thank you. Thank you, Mr. Gall, and we'll hear from Mr. Van Dusen. Good morning, and may it please the Court, this is Christopher Van Dusen. I'm counsel for the appellee intervener of the United States in this case. The United States intervened in the district court proceedings to defend the constitutionality of the bankruptcy code. And with the agreement of the other appellees, I will be using all of our 15 minutes this morning. Mr. Breland has flatly failed to meet several thresholds required to bring this 13th Amendment challenge. And the district court should be affirmed for three reasons. First and foremost, Mr. Breland has failed to allege an injury that is cognizable under the 13th Amendment because he has not claimed that he is being coerced to work by threat or force. Second, he has failed to show causation because his theories of harm misstate the bankruptcy code effects and are contradicted by the text of the code itself. Third, his claims are not right to the extent they speculate that a yet-proposed Chapter 11 plan will require Mr. Breland to pay post-petition income to his creditors. Here, no plan is confirmed or even proposed, and until a plan is confirmed, its terms would not have force, so delaying review causes Mr. Breland no hardship. As to injury, there are no allegations in this case that the bankruptcy code coerces Mr. Breland to work through force or threat of force. This is Judge Newsom. Can I ask you a favor before we get into substantive questioning? I'm having a very difficult time hearing you. It sounds like you're in a cage. Could you either move closer to your phone or pick up the receiver? Is this better, Your Honor? Much better. Much better. All right. Going back to injury, it is well-established, as the Supreme Court held in the Kuzminsky case and as this circuit decided in Greenberg v. Dengale, that if there is no coercion, there is no 13th Amendment violation. So this case is simply a matter of faithfully applying those precedents. Okay, but wait. So when you say if there is no coercion, there is no 13th Amendment violation, sort of here we go again talking about the merits, I mean, it seems to me, and you can tell me if I'm wrong, that one difficulty I have with the district court's opinion is that the district court's opinion sort of backs its way into a standing holding by saying that there's no cognizable 13th Amendment claim here, ergo no standing. That doesn't seem right to me. It seems to me that standing and the merits are separate. I mean, if it were true that every 12b-6 led to a standing dismissal, then the distinction between 12b-6 and 12b-1 would just evaporate. Your Honor, the failure of standing here is the failure to allege an injury that would be cognizable under the 13th Amendment because Mr. Greeland has not alleged that he is being coerced to work through force or threat of force. This is a different issue than whether he has failed on the merits to establish that contention as an evidentiary matter. This is simply a failing, like in a 12b-6, this is a failing to allege. Okay, well, so what you're saying then is that, I mean, I think you've just confirmed my fear that every time there is a failure to allege an adequate claim that would give rise to a 12b-6 dismissal, you have a failure of standing. Is that right? Well, Your Honor, to establish standing, the... You just have to show an injury. You don't have to show necessarily a violation or even a plausible violation of the 13th Amendment. You've just got to show that you're pinched in some way. Your Honor, to plead a violation or to allege a violation under the 13th Amendment, there needs to be an allegation of injury that is cognizable under that amendment, so an allegation of an injury that is protected by the 13th Amendment. Okay, so I'm clear then. At the end of an order concluding that a petitioner has failed to allege a plausible violation of the 13th Amendment, should the order say dismissed without prejudice for lack of standing, 12b-1, or should the order say dismissed with prejudice for a failure to state a claim, 12b-6? Your Honor, this case doesn't arise under Rule 12, so there's no need to make that distinction. But you understand the question I'm asking? I think I do, Your Honor, and what this really goes... This is more akin to a 12b-6 failure where the failure is one in the allegation because Mr. Breland, again, has not alleged that he is being coerced to work. If he does not allege an injury that is cognizable under the 13th Amendment, he has not alleged an injury under the 13th Amendment. And for that reason, he does not have standing to bring this claim because he has not shown or alleged an injury as is required to satisfy the constitutional requirements for standing. Here's the reason I'm just not sure that I understand that. For instance, let's sort of take it out of the 13th Amendment context and say that you've got a claim that arises under the Equal Protection Clause, and you have an African-American plaintiff who is complaining about unfair treatment in state employment or something, and he says, my injury is that I didn't get the job or whatever. So his injury is money. That has nothing to do with whether or not he has adequately alleged an equal protection violation, discriminatory intent, and the like. He has alleged a monetary injury. Good enough, we say. Now let's talk about the merits. Your Honor, in that case, he would have to, and I'm sorry, I don't want to comment too much on facts that aren't before the court, but in evaluating an allegation like that, the court would have to look to the nature of the injury. So if he's alleging a financial injury, the court would need to consider the nexus of that injury to the harm alleged. Mr. Breland is not alleging a harm that is cognizable under the 13th Amendment. So he is not alleging that the bankruptcy code has any effect on him that does violate the 13th Amendment as we understand it. And indeed, his only authority for the contention that he does have a 13th Amendment violation is the Clemente case, which did not reach the 13th Amendment issue. And further, Clemente only assumes the potential for involuntary servitude without an explanation of why the facts gave rise to the specter of involuntary servitude in that case. Counsel. And without that factual context. Counsel. Counsel, this is Judge Carnes. Let me ask you this. Isn't he alleging that his injury is the loss of his ability to work for himself and put money in his pocket? Isn't he alleging that's what he is suffering? Your Honor, my understanding is that he is alleging that he will be required to pay his creditors from post-petition income. And so he is essentially in peonage, he says. And on that basis, there is no 13th Amendment injury. Well, why isn't there an injury if why isn't the injury that he's alleging that the money I earn is being taken away, whether it's good or a claim on the merits or not. The money I earn or can earn is being taken away from me and put into the bankruptcy estate against my wishes. It's just like if somebody came and said, Counsel, you've been doing a good job, but we're going to take half your salary and give it to a government program that we choose. That's an injury. It may not violate the 13th Amendment. It probably violates something. I hope so. But it is an injury, is it not? Well, Your Honor, as you said, it's not an injury under the 13th Amendment. Which goes to the merits. He's alleging his injury is the loss of his ability to keep his income that he earns during this period. Why is that not an injury? Your Honor, he's saying that the injury has to result from the harm and that harm has to be cognizable under the 13th Amendment to state a claim. Yeah, to state a claim. To state a claim. To state a claim, right? I mean, that's different from to allege Article III injury, isn't it? This is Judge Karn's question following up on mine. They're two different things. Well, Your Honor, there's also no evidentiary record here. So even if there was standing, there would be no basis to reach the merits of this dispute. And, again, I don't see the nexus between any of this. For want of the alleged – for want of a satisfactory allegation of a 13th Amendment injury, there can be no harm as a result of that injury. If you haven't satisfactorily alleged that you are being harmed under the Constitution, then you cannot have an injury resulting from those harms. Because, again, you have not alleged a harm arising. You just keep saying around and around the same thing, which is you've got to have a valid claim to get past 12B6. In order to get past standing 12B1. And that's – I'm sorry. I don't believe you're going to sell that. At least from what I hear, you're not going to sell it to Judge Newsom. You're not going to sell it to me. There is a distinction between standing and injury, in fact, as alleged, and the merits. Yes, Your Honor. But to get to the merits, you have to first allege an injury that, if proven, would be cognizable. And he has not alleged that injury in the first instance here. If you're saying cognizable to me, you've got to have alleged a claim that is meritorious, you are simply wrong. Your Honor, I'm not saying he has to – I'm not saying that he has to allege a meritorious claim or that he has to prove the claim at the outset. It's simply that he has not – what he is alleging is not a 13th Amendment violation. So even if everything that he alleges is true, it would not amount to a 13th Amendment violation because he is not alleging that he is being coerced to work through force or threat of force. And on that basis, he cannot proceed past this threshold stage and continue to press his claim where, even if everything he alleged is proven, it would not amount to a claim under the 13th Amendment. I think you need – this is Judge Newsom. You just need to come to grips with the fact that your position totally collapses any distinction between the merits and standing because you keep answering standing questions with merits answered. You keep saying, you know, no plausible cognizable claim under the 13th Amendment. That is a merits issue that runs – if we were in Rule 12 land, it would be a 12b6 issue, not a 12b1 issue. We are here on a decision that tossed this guy to the curb on what we will call a 12b1 issue, which is standing. Now, what you might be trying to do is to argue an alternative basis for affirmance by saying this guy's 13th Amendment claim is no good. But I will tell you in advance, I have got my doubts about whether we can do that. I do not really think that we have it in our bag of tricks to move onto the merits issue, which if we were to rule for you on the merits, would be in effect a with prejudice dismissal when all the district court did was deny or to refuse standing, which is in effect a without prejudice dismissal. Your Honor, we are not asking for a with prejudice dismissal here. The district court should be affirmed that decision was correct. The district court's decision right to say no standing should be correct. So you agree that we should not be – there is a lot of briefing in this case about the merits of the 13th Amendment claim. You agree that we should just ignore all of that because all we should be focusing on is standing. Your Honor, the merits are wrapped up – One minute warning, counsel. The merits are wrapped up with the allegations because, again, the allegations must be proven true for him to proceed past this stage. And so if he has not alleged an injury in the first place, he should not be allowed to press his claim. This is Judge Newsom, just briefly, and then I promise I will shut up. But I fear, from your perspective, that there might – we have not heard from Judge Wilson yet – but there might be only one person on this phone call who thinks that the merits are inextricably intertwined with the standing issue, and that may be you. Your Honor, I'd like to briefly touch on causation and ripeness before my time expires. Sure. After causation, Mr. Breland's claims about the trustee's appointment misstate the code's effects. There is no requirement under 1129 or 1112 or 1115 that he work or that he contribute post-petition income to his creditors. And, indeed, in a case like this where Mr. Breland's post-petition assets by his own accounting exceed $46 million, and his liabilities are less than $10 million, he would be able to pay his creditors in full and satisfy 1129A15A, even if a creditor objected to this plan. As to 1112, there is no support for Mr. Breland's contention that 1112B – that he no longer has standing to bring an 1112B motion. The statute does not discern between debtors in or out of possession. The only authority he has for this proposition is Clemente, which concedes that other interpretations of the statute are possible, and, additionally, he might still have standing under 1109B to bring such a motion. This is Judge Wilson. Mr. Van Dusen, you don't have very much time left. Let me just ask you one question. Would you agree that we need not reach the merits of his involuntary servitude 13th Amendment claim if we were to find that he lacks standing to bring that claim because that claim would be premature in the absence of a Chapter 11 reorganization plan entered by the bankruptcy court? Would you agree to that? Your Honor, I would agree that these claims lack likeness, and they're certainly not fit for determination at this time because they are based on significant assumptions, so the controversy is underdeveloped. The claim is also not right because, as to the plan, the claim is also not right because Mr. Breland suffers no hardship for his labor. He may or may not have an injury in the future, but for our present purposes he has not sustained an injury sufficient to confer standing because there's no reorganization plan entered by the bankruptcy court. Is that your argument? Your Honor, we would have to consider, as a plan moves closer to confirmation, we would have to consider how the likeness inquiry changes, but certainly, and, again, I can't commit to a certain position in the future, but as the plan moves closer to confirmation, issues become more solidified, and we would have to reevaluate whether the claim is right at that time. I got you. Thank you, Mr. Van Dusen. Thank you. And, Mr. Dahl, you've reserved some time for rebuttal. I have, Your Honor. Can you hear me? Yes, we can. Okay, good. Sorry, just making sure. Thank you, Judge. First, I want to touch on a question a little more that Judge Carnes raised, and that's regarding the waiver issue. I would point the court to the Clemente case, which is the only case that actually dealt with the troika of statutes that I've discussed, and it included a statement that a debtor must not be forced with a choice of either gaining a fresh start through bankruptcy relief or becoming, on the other hand, an indentured servant to creditors, and further, that courts should indulge every reasonable presumption against a waiver of constitutional rights. This is Judge Wilson. Let me just ask you this question, and your argument is that to the extent that he has an injury now or in the future, he's going to be forced to pay creditors with post-petition income, and he's going to be working for the trustee involuntarily against his will. That's his concern. My question is, how does that make him different than any other Chapter 11 debtor? Well, here, because of the troika of statutes, a trustee has been appointed, and actually, the injury is worse than that. Well, those troika of statutes would apply to any other Chapter 11 debtor who files a petition for bankruptcy, wouldn't it? Here's the difference. When Congress in 2005, under the Bankruptcy, Abuse Prevention, and Consumer Protection Act, added 1115A2, which put his post-petition earnings for services into the estate, combined with a trustee, combined with no way out, he was immediately injured, and that happens before a plan, because under the statute, those post-petition earnings are actually being put in the trustee's account now, and like I said earlier, even if he wants to work for a fast food restaurant, let me ask you about what you're getting at now, but let me ask you this. If no trustee had been appointed, all of his post-filing income would belong to the estate, would it not? Under 1115A1 and 2? It would, but he would be the debtor in possession, and he would still have the ability to do business. He would still have a way out. That just says there's no trustee appointed. But if there had been no trustee appointed in this case, all of his income would still be property of the estate, not his individual out-of-the-estate property, correct? Right. When he files a chapter 11, he voluntarily starts a process in which his income, post-filing, belongs to the estate. But at that point, there was no trustee, and very, very importantly, before the appointment of the trustee under section 1112, he had a way out. He has no way out. Once that trustee was appointed, 1112 does not allow for that. That's the third series in the troika. In a chapter 13 case, Congress did its homework and gave a way out. Do you know a 13, you can't be forced into a 13? The very reason that you say that Congress cut off his way out, he can still dismiss with cause. And he not? He can move to dismiss, and he did move to dismiss, and gave numerous reasons for cause. But he doesn't have the absolute right. He's in the trap. In other words, the trap door can be opened in a chapter 13 to avoid this constitutional conundrum. But he has no such free right in a chapter 11 as it was currently written by Congress under the troika. That's the problem. You have to put the three of the statutes together, right? But when you put them together, that's when you run the red light. That's when he doesn't have a way out. Now, there is a way out for this court, which is constitutional avoidance. I would say, you know, the constitutional violation can be avoided by this court. Not because it's not right. It is right. He's hurt before a plan. Not because Mr. Breland doesn't have standing. He has standing. But because there is a way out as found in Clemente, which, again, we say is on all fours on this point, right? On this point, that constitutional avoidance doctrine allows you to say, is there a way we can avoid this? Yes. He can dismiss the case, which he's asked the court to do below. The court denied it. But this court could remand the case. And we ask respectfully that the court remand the case. So, counsel, let me get this right. We can use the constitutional avoidance issue to rewrite the statute to provide that even after the trustee is appointed, he has an absolute right to dismiss Chapter 11. That's your avoidance, just rewrite the statute. Well, you would say that the statute itself is unconstitutional. Well, then we don't avoid the constitutional issue, do we? We decide it in my favor. Your constitutional avoidance doctrine is decide the constitutional issue in my favor, and then the constitutional issue will disappear. That's not how the doctrine works. Well, I see your point. He did move to dismiss, and then Clemente moved to convert. I will say some of the appellees on the other side did actually move in the alternative to dismiss the case. They moved for a trustee or in the alternative to dismiss. In that sense, you have mutuality among the parties like you did in Clemente. But I do see Your Honor's point. Your Honor, have I answered your question? As well as you're able to do so given the law. Well, I see your point. Our point is that because both sides, at least in some context, had asked for dismissal below, it is a way out. But let me say, insofar as you've got the constitutional issue before you, the same result is what we ask. In other words, you remand the case, find that the statutes as connected, the troika, are unconstitutional. We would ask respectfully that the court then remand the case back with instructions to dismiss the case because the combination of the three statutes is unconstitutional. All right. Thank you, Mr. Gall and Mr. Van Duzen. Is my time up? Ms. Geddes, does Mr. Gall have some time reserved? His argument has expired. Okay. And I think we have your argument, Mr. Gall. Thank you so much and have a good morning. All right. Thank you.